HIGHT v. CASANAS, Appellant

(March 28, 1927. Opinion and Decree.)

(*Syllabus by the Court*)

1. Louisiana    Digest — Automobiles — Par. 4 (c).

It is imprudent to back out an automobile from its garage across the sidewalk without taking extra precautions to avoid running down passersby.

2. Louisiana Digest—Automobiles—Par. 8; Evidence—Par. 343, 344.

The testimony of a plaintiff concerning injuries which are occult and latent and not visible to professional eyes must be accepted with caution.

3. Louisiana Digest—Automobiles—Par. 9; Damages—Par. 103, 104.

Five hundred dollars for pain and suffering caused by contusions considered sufficient compensation when added to compensation for actual loss of earning capacity.

(See Civil Code, Article 2315. Editor's note.)

Appeal from Civil District Court. Hon. Porter Parker, Judge.

Action by Mrs. Helen B. Hight against Benjamin C. Casanas.

There was judgment for plaintiff and defendant appealed.

Judgment amended and affirmed.

Joseph H. Brewer, of New Orleans, attorney for plaintiff, appellee.

Edward Rightor, of New Orleans, attorney for defendant, appellant.

CLAIBORNE, J.    Plaintiff was knocked down and injured by an automobile. Hence this suit.

She alleged that on June 4, 1924, at about 12 o'clock noon, she was walking towards the woods along the uptown sidewalk of Burdette street in front of the home of the defendant No. 630 Burdette street.

When suddenly, negligently and without any warning, the chauffeur of the defendant backed an automobile from the driveway of said home and struck plaintiff with violence, knocked her down and rolled over her right shoulder, arm and neck, inflicting painful and serious injuries of a permanent character, impairing the use of her shoulder and arm, preventing her from standing upon her feet for any length of time without much pain; that she is a composer of popular songs and a student of music, and also operated a barber shop at No. 7833 St. Charles Avenue, where she enjoyed a lucrative practice and was known as the "Lady Barber of Carrollton"; that her business has been destroyed to a great

extent by her injuries; that she has suf-- fered the following damage:

1st. Inability to continue the oper-
ation of her barber shop.....$10,000.00
2nd. Pain and suffering................ 5,000.00
3rd. Medical expenses actually in-
curred ......................................... 111.50
4th. Medical expenses which will
be incurred ............................... .500.00
5th. Inability to continue her
music and writing of songs.. 10,000.00
                                    _____
Total......................$25,611.50

The defendant admitted that his home was at No. 630 Burdette street, but denied all the other allegations of the petition. He specially denied all negligence on his part and alleged that the accident was due to plaintiff's contributory negligence.

The case was tried twice. At the first trial the plaintiff remitted $10,000 of her claim, reducing it to $15,611.50. At that trial the jury failed to agree. Upon the second trial there was a verdict and judgment for $4,500.

From this judgment the defendant has appealed. In this court the plaintiff prayed for an increase for the judgment.

It was admitted that the chauffeur, McDowell, was driving the defendant's car in the course of his employment.

The plaintiff herself and two witnesses testified to the circumstances of the accident. The plaintiff was walking along the sidewalk when defendant's Cadillac car was driven by defendant's chauffeur out of the garage, across the sidewalk in the direction of the street; the car struck the plaintiff upon the sidewalk and knocked her down.

The defendant's plea of contributory negligence on the part of the plaintiff is not well founded.

There is nothing to show that she knew that there was a garage upon defendant's premises, or that she should have anticipated that a car would emerge from a garage at that moment, necessitating care on her part. On the other hand, the defendant's chauffeur should have foreseen that there might have been persons passing upon the sidewalk at that moment and it was negligence on his part not to have seen the plaintiff and avoided the accident. Carroll vs. Ry., 125 La. 898; 119 La. 418.

There is no evidence that he gave any warning of his approach. Backing of steam cars without extra precautions, has been held negligent. Eyma Brown vs. The Texas & Pacific Ry. Co., 42 La. Ann. 350, 7 So. 682; Robert T. Hamilton and Wife vs. Morgan's La. & Tex. R. R. & S. S. Co., 42 La. Ann. 824, 8 So. 586; Downing vs. Morgan's L. & T. Ry. & S. S. Co., 104 La. 508, 29 So. 207; Hollins et ux. vs. New Orleans & N. E. R. Co., 119 La. 418, 44 So. 159.

The fact of the negligence of the chauffeur is therefore established. He did not testify on account of absence. The only question, therefore, is the amount of the damage.

The plaintiff testified that when the car knocked her down she fell between the two rear wheels and the hub struck her; after she was picked up, she walked to the street car which took her to the Charity Hospital; she did not receive attention there quickly enough and she left there and went to the Presbyterian Hospital, where her arm was treated and put in a sling; there was an x-ray taken which showed no fracture or bones broken, but torn tissues under the collar bone; she operated a "beauty shop"; her weekly earnings were on an average of $40; she studied piano and composed songs; since her accident

she was not physically able to cut hair nor to play upon the piano, nor compose songs, owing to the soreness of her arm; she had partially improved on the day of the trial; her recovery was a question of time; her medical expenses were as follows:

Presbyterian Hospital _____$17.50
X-ray, Dr. Henriques _____ 17.50
Touro Infirmary _____ 9.00
Dr. Talbot _____ 20.00
                                                    _____
                                                    $64.00

Plaintiff is 41 years of age, has been on the stage doing some acting and some singing; at the time of the accident she lived in the rear of 7833 St. Charles Avenue paying $15 a month rent.

Dr. Paul Talbot, for plaintiff, testified that he examined the plaintiff in June or July, after the accident and found some little swelling and redness over her right shoulder with a little tenderness which necessarily interfered with the use of her right arm somewhat; there was no repression of the shoulder joint; the only thing that caused the inability to move the shoulder normally was the inflammation around the joint; he thought she had some little injury to the ligaments that support that joint; she had pain of the shoulder; he saw the plaintiff only one time; her injuries are not of a permanent character.

Royal Hoyt, for the plaintiff, said that hearing an outcry he turned around and saw the plaintiff on the ground; he assisted in raising her up, and her shoulder was "marked up" and arm bruised; Mrs. Casanas came to the door and hallowed to bring her up, but the plaintiff did not go up, but went right off.

Mrs. Munier testified that the plaintiff occupied her premises for two or three years; that she paid her rent punctually prior to the accident, but afterwards failed until August when she vacated owing six months.

Mrs. Frank testified that plaintiff ceased to take music lessons from her after the accident; and Henry Asher, that she returned a sewing machine upon which she was making payments.

The record contains four songs which the plaintiff says she had published; but she never received any compensation for songs composed by her.

The defendant introduced only one witness, Dr. Urban Mass.

At the request of the defendant, on August 24, 1924, two months and twenty days after the accident and one month after the filing of this suit, he examined the plaintiff. He is a graduate of Tulane University, professor of surgery there, and senior surgeon at Charity Hospital and Touro Infirmary. He was unable to find any defect or sign of injury or disease upon plaintiff; his attention was called particularly to her shoulder; she carried her arm in a sling and the stiffness and inability that she complained of was entirely due to immobilization or keeping the arm quiet by carrying it in a sling; he had an x-ray picture taken by Dr. Samuel Bony, the official of the I. C.; it showed no injury or disease in and around the joint; at the time he examined her there was no injury to her body.

The fact of injury to the plaintiff is established by herself and by Dr. Talbot, but the extent of it is sworn to only by the plaintiff herself. It must be noted that the injury sworn to by the plaintiff, other than the slight evidence of it testified to by Dr. Talbot, is not visible to the naked eye and is occult and latent, and visible to no one. For that reason it

must be received with much caution. See Furlow vs. Maison Blanche, 3 La. App.

Thirty days after the accident Dr. Talbot saw only a little redness and swelling; and sixty days thereafter Dr. Mass saw no injury to her body; that the plaintiff had her arm in a sling was the only occasion for inferring suffering and that was caused by the sling itself. There is no occasion to discredit the testimony of such eminent practitioners, even if they were employed each by a different litigant, the more so that they practically concur.

We must also consider the failure of the first jury to agree.

It is difficult, under such testimony, to attribute the closing of the beauty shop, the cessation of the music lessons and the composing of songs and the surrender of the sewing machine, and the failure to pay rent to the injury suffered by the plaintiff. The very exaggeration of her money claims leads to the suspicion of like exaggeration of her injuries.

But the fact remains that the plaintiff did suffer some injury in the nature of contusions, painful, but not permanent. She says her earnings were $40 per week. We shall allow her about six months' loss of earnings, about $1000, and $500 for pain and suffering.

It is therefore ordered that the judgment herein be amended by reducing the amount thereof from four thousand five hundred dollars, to one thousand five hundred dollars, and as thus amended that the judgment be affirmed, the defendant to pay the costs in both courts.